IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

Michelle Ashley
    Plaintiff

v.

Marshall County Schools
    Defendant

Civil Action No:
JURY DEMAND

FILED
2012 DEC 28  DB
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Michelle Ashley, by and through counsel hereby complains against the Defendant, Marshall County Schools as follows:

### NATURE OF THE ACTION

1. This is an action for declaratory and equitable relief as well as monetary damages, to redress Defendant's disparate treatment, harassment and retaliation due to Plaintiff having filed a complaint with the EEOC for redress of racial discrimination in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C SS 2000e et seq. and the Tennessee Human Rights Act, Tenn. Code Ann. S 4-21-101(a)(1) (1991 Repl.).

### JURISDICTION AND VENUE

2. The Court has jurisdiction over the action pursuant to 28 U.S.C. SS 1331 and 1343, as this action involves questions of federal law regarding the infringement of Plaintiff's civil rights under Title VII and Section 1981. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. 1367(a).

3. Venue is proper in this district pursuant to 28 U.S.C. S 1391(b) because all of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## THE PARTIES

4. Plaintiff, Michelle Ashley is a natural person who resides in Marshall County, Tennessee. She is black and female.

5. Defendant Marshall County Board of Education ("Marshall County Board of Education") is a governmental entity and an agent of the State of Tennessee operating public schools on behalf of the State of Tennessee in Marshall County.

## PROCEDURAL PREREQUISITES

6. Plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on August 12, 2011 alleging claims of disparate treatment related to Marshall County Board of Education decision to redistribute administrative assistants among Central Office and schools. The EEOC investigated the charge and granted plaintiff a right to sue.

7. All conditions precedent to the filing of the suit has been performed or has occurred.

## FACTUAL BACKGROUND

8. The Marshall County Board of Education (hereinafter, "the Board") consists of eight (8) members. During the relevant times the Board consisted of Barbara Kennedy, Kristen Gold, Mike Kenny, Curt Denton, Sam Smith, Randy Perryman, Donnie Moses, Ann Tears and Harvey Jones.

9. The Director of Schools for Marshall County was Roy Dukes, from February 2009-March 2012.

10. The Director of Schools for Marshall County was Jackie Abernathy from March 2012, to the present.

11. The Director of Schools exercised nominal control over the assignment of central office

personnel and principals. The Board exercised budgetary authority over district operations however, under the guise of the budget approval process regularly intervened on the assignment of personnel.

12. One such instance where the Board intervened was the assignment of an administrative assistant in the district's Coordinated School Health (CSH) program.

13. In 2007, Marshall County received a grant to establish a Coordinated School Health program. Since the initial creation of the program, the Director of Coordinated School Health ("DCSH") was responsible for administering a budget with two funding sources. One source of funding was provided through a grant for that purpose from the State of Tennessee and under the supervision of the State Coordinated School Health Coordinator. These are generally referred to as CSH "state funds." The other source is pre-allocated local matching funds provided by the County Commission. The proposed budget included salaries for a full-time professional director and a full-time administrative assistant.

14. The first DCSH was Heather Lodoria, a white female who she served from July 1, 2007 to June 30, 2008. She had a full-time administrative assistant, Darlene Bailey.

15. Lodoria was followed by Okey Gaskill, a white male, who served as the DCSH from July 1, 2008 to June 30, 2009. He too, had the benefit of a full time administrative assistant, Darlene Bailey.

16. On or about June 4, 2009, Lyn Stacey the principal of Spot Lowe Vocational School requested an administrative assistant directly from the Board.

17. In response to the request, the Board converted the CSH administrative assistant position into a split position to be shared between the DCSH and the principal at Spot Lowe Vocational School effective the 2009-2010 school year.

18. At this time, Patsy Thomas, a black female was appointed DCSH and she served for the 2009-2010 school year. Therefore, unlike her predecessors, her administrative assistant, Deana

Martin was shared with the principal of the vocational school, working mornings at the vocational school and afternoons at the Central Office.

19. The portion of Ms. Martin's salary attributable to her duties working as an assistant to the DCSH was paid from pre-allocated local matching funds from the County which were required to match CSH State funds. The portion of her salary attributable to her duties at Spot Lowe would be paid from General Purpose (GP) funds.

20. Plaintiff was hired by Marshall County Board of Education as the Director of Coordinated Student Health at the beginning of the 2010-2011 school year. She held that position until June 30, 2012.

21. Plaintiff supervised Ms. Martin, on a part-time basis, throughout the 2010 - 2011, school year and submitted a budget to the State Coordinator for Coordinated School Health for Ms. Martin to continue as a part-time employee for the 2011-2012 school year.

22. On August 1, 2011, Director Dukes submitted to the Board an organizational chart detailing his proposed distribution of Central Office supervisors and their assistants.

23. The Board refused to fund the proposed organizational chart presented by the Director of Schools for both the supervisors and assistants.

24. Particularly, the board refused to hire an assistant for the Finance Director (black female), and removed the assistant position for the Director of Federal Programs (black female), removed a part time assistant from the Director of Testing (black female), and removed a part-time assistant from the Plaintiff (black female), then serving as the Director of Coordinated School Health.

25. However, the Board approved the assignments of a part-time assistant to the Director of Elementary Curriculum, (white female); a part-time assistant to the Director of Secondary Curriculum, (white female); and, a full-time assistant to the Principal of Spot Lowe Vocational School, (white male).

26. These personnel changes were at the insistence of the Board citing budget saving measures, effectively overruling Director Dukes decisions regarding how best to allocate and assign personnel.

27. During the August 1, 2011, Board meeting, Director Dukes explained that if Ms. Martin moved to full time at Spot Lowe her entire salary would have to be paid from unallocated GP funds and pre-allocated local funds would still have to be spent to match CSH State funds. Thus moving Ms. Martin would not reduce any pre-allocated matching funds, but would increase GP expenditures.

28. The Board did not consider moving anyone to fill the assistant position vacated by Ms. Martin although the money for that salary had been pre-allocated, submitted and approved by the State.

29. After August 1, 2011, Ms. Martin began working full-time at Spot Lowe with a salary of approximately $18,480. This resulted in a net increase in salary/benefit costs to the GP Funds of at least $9,240.

30. Plaintiff asked for the opportunity to present evidence to the Board to justify why she needed an assistant and why the Board should reconsider its decision regarding the removal of the assistant assigned to CSH.

31. On August 8, 2011, Plaintiff appeared before the Board and explained why she needed an assistant and why the assistant would not be costly to the district's budget. Following Plaintiff's presentation, the Board approved the hiring of a CSH assistant.

32. Despite its agreement to authorize an assistant in the CSH program, the Board refused to reassign Ms. Martin to resume work as the CSH assistant and then hire a new assistant for the Spot Lowe Vocational School or in the alternative allow Ms. Martin to continue working part time at both locations until a new full time assistant could be hired for the CSH program.

33. Instead, the Board directed that pre-allocated State-CSH funds be used to hire an assistant and instructed the Director of Schools to hire a new employee.

34. It took approximately six (6) weeks to advertise, interview, negotiate and hire a new employee.

35. This was followed by approximately six (6) to eight (8) weeks of training for the new employee to independently and adequately perform her job function.

36. During this prolonged period, Plaintiff was required to perform the job functions of both her job as Director and that of the CSH assistant without increased compensation.

37. Conversely, during this same 15 week period, the Principal of Spot Lowe had the benefit of a fully trained assistant who could immediately perform her job functions, as she had been doing them for over a year.

38. In preparation for the 2012-2013 school year, Plaintiff submitted several CSH budget proposals to the newly appointed Director at least one of which included a full-time assistant for CSH. Director Abernathy refused to advocate to the Board for a full-time assistant for CSH. Instead she chose to advocate only for a part-time assistant, which was approved.

39. Director Abernathy refused to renew Plaintiff's employment contract for the 2012-2013 school year and Plaintiff's last date of work was June 30, 2012.

40. Plaintiff maintains that Director Abernathy hired Deborah Wade to be the new Director of CSH. Although a black female, Ms. Wade had previously been the principal at Marshall County Elementary School and had no prior experience in coordinated school health programs or related disciplines.

41. Subsequently, the CSH budget was amended and the part-time assistant position that was approved has been eliminated, with the duties of the DCSH being increased to include duties of the administrative assistant and the money applied to increase Ms. Wade's salary.

42. Since the Director of Coordinated School Health position was held by Patsy Thomas, the Plaintiff and now its current Director Deborah Wade (all black females), the Board has directly or indirectly reduced the administrative help for that position. While during this same period, the Board has increased the administrative help for similarly situated white supervisors.

## CAUSES OF ACTION

### I.     DISPARATE TREATMENT

43. Plaintiff, an African American female, is a member of a protected class.

44. Plaintiff suffered an adverse employment action in that the Board removed her assistant forcing her to have to unnecessarily justify the need for an assistant and forced to perform dual functions for a prolonged period.

45. The Board's actions were unwarranted and had no rational basis other than to punish or harass Plaintiff.

46. Similarly situated white employees with less need were assigned assistants.

47. During the same course of conduct, the Board either refused to hire or removed assistants of other black employees.

48. The Board's decision to reallocate assistants under the guise of budgetary concerns adversely affected the ability of Plaintiff, and her black colleagues, to perform their job functions and constituted a significant change in the terms and conditions of employment.

49. The Board's stated reason for it reallocation, budgetary concerns, are mere pretext because the reallocation(s) actually cost the school district additional funds.

50. The Board's decision to replace Plaintiff's assistant was not self-corrective action or an effort to provide relief because they only agreed to reverse its earlier decision after being informed that the assignment of an administrative assistant was mandated by the provisions of the CSH grant provided by the State.

51. Further, despite their self-corrective action, Plaintiff was not restored to her original position because the decision significantly changed the terms and conditions of her employment for a prolonged period.

52. The Board's decision of August 8, 2011 to reverse itself still burdened Plaintiff in that she did

not receive immediate relief. After refusing to renew Plaintiff's contract, Defendant replaced Plaintiff with another black female which was merely an effort to mask a clear pattern of discrimination.

## II: RETALIATION

53. On August 12, 2011 Plaintiff took a protected action by filing a complaint against Defendant with the EEOC.

54. Plaintiff subsequently suffered an adverse employment action when the assistant position she fought for and received on August 8, 2010, was cut from full time to part time by the new Director of Schools, Jackie Abernathy.

55. Plaintiff suffered a further adverse employment action when her contract was not renewed prior to the 2012 - 2013 school year for no apparent reason.

56. Defendant has offered no genuine reason for either adverse action.

57. Each of these actions by Defendant constitute retaliation.

## JURY DEMAND

Plaintiff demands a jury trial on all issues which may be determined by a jury.

**WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief.**

1. Entry of judgment in favor of Plaintiff against Defendant.

2. A declaratory judgment that the reallocation of administrative support was motivated by discriminatory animus in nature and the refusal to renew Plaintiff's employment contract was unwarranted and retaliatory, both in violation of Plaintiff's civil rights.

3. An award to plaintiff's for compensatory damages in an amount to be shown at trial for past and future economic and non-economic losses, including emotional distress, mental anguish and consequential losses

4. An award to Plaintiff for exemplary or punitive damages.

5. An award to Plaintiff for reasonable attorney's fees and costs, including, but not limited to, expert witness fees, as provided in Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C Section 2000e-5(k), 42 U.S.C. Section 1981A, 42 U.S.C. Section 1988 and as provided under state law.

6. An award of interest on any awards at the highest rate allowable by law.

7. Such other relief as this Court deems just and appropriate.

8. PLAINTIFF REQUESTS TRIAL BY JURY ON ALL CLAIMS ALLOWED BY LAW

Respectfully Submitted,

_____
THE WHITE LAW GROUP, PLLC
Quenton I. White, BPR#015136
*Attorney for Michelle Ashley*
942 Jefferson Street
Nashville, Tennessee 37208
(615) 271-2192

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been mailed to Samuel L. Jackson, Esq., Lewis King, 424 Church Street, Suite 2500, P.O. Box 198615, Nashville, TN, on this 28th day of December 2012:

_____
Quenton I. White